UNITED STATES of America,
Appellee,

v.

Charles Henry BEAVER, Appellant.

No. 8572.

United States Court of Appeals
Fourth Circuit.

Argued May 30, 1962.

Decided Oct. 3, 1962.

Certiorari Denied Jan. 7, 1963.

See 83 S.Ct. 505.

Richard M. Welling, Charlotte, N. C.
(Hayden C. Covington, Brooklyn, N. Y.,
on brief), for appellant.

Harold W. Gavin, Asst. U. S. Atty.
(Robert H. Cowen, U. S. Atty., on brief),
for appellee.

Before BRYAN and BELL, Circuit
Judges, and BARKSDALE, District
Judge.

ALBERT V. BRYAN, Circuit Judge.

Conscientious objector (Jehovah's Witness) Charles Henry Beaver appeals his conviction of refusing to be inducted into the military forces as ordered by his local draft board pursuant to the Universal Military Training and Service Act, 50 U.S.C. Appendix, §§ 451, 462(a). At trial the Court found he had adopted his beliefs some three months before the order for induction or about five years after his registration. Appellant contends this finding proves the invalidity of the order, relying upon 50 U.S.C. Appendix, § 456 (j) and alleged administrative faults depriving him of an opportunity to invoke draft exemption. The section reads:

"Nothing contained in this title [sections 451–454 and 455–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. * * * "

However, the Court determined—as did the board—that the exemption had not been claimed in the manner required by Selective Service Regulations. Deliberate refusal of induction being admitted, Beaver's conviction followed.

The argument on this appeal is focused on whether the Act's exemption is absolute or is controllable by regulation. Orderly allowance of the exemption, in our opinion, warrants reasonable rules for its invocation. The regulations here pertinent are just; Beaver was confessedly in non-compliance with them, and accordingly was not entitled to exemption. We affirm.

Prescription of "necessary rules and regulations to carry out the provisions" of the Act is therein authorized. 50 U. S.C. Appendix, § 460(b) and (c). The authority to promulgate them was vested in the President, and by him delegated to the Director of the Selective Service System. The regulations particularly pertinent in this case are the following, 32 C.F.R.:

1641.3 "Communication by mail. It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him. * * * "

1625.1 "Classification not permanent.

* * * * *

"(b) Each classified registrant * * * shall, within 10 days after it occurs, report to the local board in writing any fact that might result in the registrant being placed in a different classification. * * * "

1625.2 "When registrant's classification may be reopened and considered anew. The local board may reopen and consider anew the classification of a registrant (1) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252), unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." (Emphasis supplied)

1625.4 "Refusal to reopen and consider anew registrant's classification. When a registrant * * * files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts. are presented, the local board is of the opinion that such

facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required."

Appellant registered on September 14, 1954, submitted to a physical examination and on April 23, 1957, was classified I–A. About May 13, 1958, he gave the local board his mailing address as 908 Durham Street, Burlington, North Carolina, doing so on Form NC 26, "Current Information For Local Board".

He moved to Gibsonville, North Carolina, in December, 1958, but did not notify the board of the change of address. In fact, he gave no such notice until September 2, 1959, after he had been ordered to report for induction. At trial he admitted awareness of the regulation requiring him to keep the board advised of his mailing address.

Beaver, the Court found, became a minister of Jehovah's Witnesses and a conscientious objector on or about May 9, 1959. Word of his conversion to this belief was not sent the board at any time prior to receipt by him of his order for induction on or about August 26, 1959.

August 12, 1959, the local board sent to appellant by mail to his Burlington address a new current information Form NC 26. This form required an answer on or before August 22nd, but it was not completed and returned to the board until after the order to report was issued. That order was issued and mailed to Beaver on August 25th, directing him to report for induction on September 9, 1959.

Beaver testified that he did not receive the board's communication of August 12, 1959—enclosing the current information request—until after the response date of August 22nd. On August 31, 1959, having received the order to report dated August 25, Beaver mailed to the local board a letter in which, disclosing his ministry, he requested a form for conscientious objectors (Form 150) with consequent reopening of his classification and the right of personal appearance. He asked for a written reply on whether his request to reopen would be granted. Enclosed with his letter was an affidavit as to his clerical status and also the completed "Current Information for Local Board" form. This letter with enclosures was received by the board on September 2, 1959.

In reply, by letter dated September 4, 1959, the local board sent him the conscientious objector form and a form postponing his induction. The letter advised him:

"The postponement was granted in order for the Board to consider your case at the next board meeting. You will be advised after said meeting if your case is to be reopened. If the Board reopens your case, you will then have the right to personal appearance and appeal. If the case is not reopened, you will be expected to report for induction with our October call."

Meeting September 19, 1959, the board considered the completed conscientious objector form as well as the other papers heretofore mentioned submitted by Beaver, and decided that this evidence, all of which was submitted by Beaver subsequent to the issuance of the order to report for induction, did "not evidence * * * a change in status resulting from circumstances of which he had no control". On that day the board wrote appellant "You are hereby ordered to report * * * October 1, 1959 * * * for induction".

Beaver reported for induction on October 1, 1959, and on the same day the board received a letter from him stating he had written the Presidential Board, Washington, D. C. advising it of "my being a minister and conscientious objector and having not been classified according-

ly." On October 2, 1959, he executed a written refusal to be inducted into the armed forces.

■ I. The fundamental assault of Beaver on his conviction is this: the exemption granted by the Act in § 456(j), supra, contains no limitation upon the time for assertion of the exemption of a conscientious objector, and that consequently Service Regulation 1625.2 cannot override the Act by a stipulation that " * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction. * * * " While there is some authority to uphold this view—United States v. Underwood, 151 F.Supp. 874 (E.D.Pa.1955), for example—we agree with Keene v. United States, 266 F.2d 378, 383 (10 Cir. 1959) that the better view is opposed to these decisions. In our opinion 1625.2 is a fair regulation for the guidance of the board in extending the exemption to registrants. In Keene v. United States, supra, Judge Murrah in speaking for the Court upon the very statute here involved —giving exemption for religious beliefs —epitomized the reasons for our conclusion, 266 F.2d at 383:

> "Concededly, no one has a constitutional right to exemption from military service. It is a matter of legislative grace. * * *
>
> "It does not seem unreasonable or derogatory to the spirit and purpose of the exempting statute to provide by regulation that no request for reopening and reclassification shall be entertained after notice to report for induction is mailed. Otherwise, the whole machinery of the selective service process may conceivably be disrupted by last minute changes in status for purposes of avoidance. Such is the manifest purpose of the proviso in Regulation 1625.2. We think the Regulations have application to a conscientious objector's claim as all other claims for a change in status. It seems also entirely consistent with the procedural safeguards provided in the selective service process to say that the circumstances relied upon to show a change in status must have occurred after the induction notice was mailed. * * * "

Conscientious objector status does not per se excuse the registrant from induction but only from "combatant training and service". The Act may still subject him to induction even if his claim is "sustained by the local board", for "noncombatant service" may be then assigned. Alternatively, if he is "conscientiously opposed" to the latter service, he may "be ordered by his local board, subject to such regulations as the President may prescribe" to do such civilian work "as the local board may deem appropriate". That the claim and grant of the exemption were to be pressed and obtained only through a regulated procedure thus appears again from the intent and need manifested in these provisions.

Instantly, Beaver made no effort to pursue his exemption according to the regulations. Concededly well aware of their requirements, he wilfully ignored them. Primarily, he failed to give notice of his change of address, precluding prompt receipt of notices from the board. Yet, he relies now in his defense upon his failure to receive the form mailed him on August 12, 1959, asking for current information, until after its cut-off date of August 22, 1959. For this reason, he says, he did not complete and return the form before receiving his order to report.

Furthermore, although he embraced his conscientious belief on or before May 9, 1959, he gave the board no word of his persuasion until August 31, 1959, when he mailed the letter requesting reclassification because of his entry into the ministry. If this was too late it was because he left unfulfilled his obligation to advise the board within 10 days of any change in his status. Neither the Board nor the Court had to determine what constitutes "circumstances over which the registrant had no control", because he has never contended

his status changed after the issuance of the order to report for induction.

II. Even if Regulation 1625.2 is valid and the ancillary regulations are sustainable, Beaver next asserts, the board has failed to give him a chance to be heard on his claim under them. Failure of the board to reopen his classification and grant him the right of personal appearance to present his request for the new classification he assigns as a denial of procedural due process.

■ To begin with, his contention is that the mere mailing to him of the conscientious objector form was a reopening of his classification and gave him the right to be heard at the September 19, 1959, meeting. But the transmittal of the form was only a compliance with Regulation 1621.11 directing the board on request to furnish *any* person claiming to be a conscientious objector with a copy of the appropriate form therefor. It had no effect on the classification. Boyd v. United States, 269 F.2d 607, 609 (9 Cir. 1959).

■ Next, Beaver avers that he was entitled to be heard by the board on the issue made by the proviso of Regulation 1625.2, supra, of whether the classification should be reopened, that is, on whether "there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." With this contention we also disagree. The regulations do not provide for a hearing at this stage. The design of the Act leaves to the board, as a preliminary determination on the right to a review, the question whether cause has been shown therefor. In our jurisprudence, this is a familiar concept—as in motions for rehearings and reconsiderations—and we know of no absolute obligation to afford a hearing on the application for them.

Nor has Beaver just ground to complain that he received no notice of the denial of his request for reopening. Regulation 1625.4, supra, does provide for advice to the registrant of any such denial. But we think, the order to report

mailed to him on September 9, 1959 had the full purport and effect of the notice required by 1625.4.

Again, we think unfounded Beaver's assertion that he was not allowed an appeal from the ruling of September 19, 1959, denying a reopening of his classification. No provision is made in the regulations for an appeal such as here is sought. In this the appellant has no valid grievance. Klubnikin v. United States, 227 F.2d 87, 90–91 (9 Cir. 1955) cert. denied 350 U.S. 975, 76 S.Ct. 453, 100 L.Ed. 846 (1956); Boyd v. United States, supra, 269 F.2d 607, 611.

■ The file of the registrant contained a copy of the Selective Service System's bulletin entitled "Selective Service". In the bulletin was an article referring to the Keene case, supra, holding that a claim of a conscientious objector must be declined if the form therefor is not filed before the issuance of the order to report. Appellant says he had no knowledge of this bulletin or of its notice by the board. Consequently, he argues, it was considered by the board without an opportunity afforded him to answer it. The decision and the bulletin were public records, of which the board and the appellant both could—and should—take notice. It was not evidence withheld from the exemption-seeker as in Brewer v. United States, 211 F.2d 864 (4 Cir. 1954) cited by the appellant. He has no meritorious objection here.

III. Our opinion is that the board and the District Court were altogether justified in not exempting Beaver. The Congress, in our judgment, did not intend to shield from induction a registrant who in every way flouted the orderly process prescribed by the Selective Service System for the procurement of exemption.

Decisions cited by the appellant are on their facts so different from the circumstances of the present case that they have no persuasive value to us. E. g., United States v. Vincelli, 215 F.2d 210 (2 Cir. 1954) *aff'd.* on rehearing 216 F.2d 681 (which in *dictum* encourages our decision here, 215 F.2d at 213); and United

States v. Packer, 200 F.2d 540 (2 Cir. 1952), rev'd. on other grounds, United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953).

The judgment of the District Court will be affirmed.

Affirmed.

J. SPENCER BELL, Circuit Judge (dissenting).

I cannot agree with my colleagues. The command of the statute is clear and precise:

"Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. * * *" 50 U.S.C.Appendix, § 456 (j), 65 Stat. 75, 83, 86.

The Trial Court's findings of fact are clear and precise on this point:

"The Court is of the opinion and so finds that the defendant became a minister and a conscientious objector on or before May 9, 1959, prior to the mailing of the Order to Report for Induction on August 25, 1959, * * *."

The Appellant registered on September 14, 1954. He was classified 1-A on April 23, 1957. On August 12, 1959, the Board sent him a current information questionnaire. On August 25, 1959, he was ordered to report for induction on September 9, 1959. On September 2, 1959, the Appellant requested a reopening of his classification and that a Conscientious Objector Form 150 be sent him for filing. The form was properly completed and filed on September 14, 1959. In the interim the Board, acting upon advice of the State Director, postponed the Appellant's induction until its "October call". On September 19, 1959, the Board considered Appellant's case and reached the conclusion that the new evidence submitted did not show a change of status subsequent to his induc-tion notice resulting from circumstances over which Appellant had no control. He was ordered to report for induction on October 1, 1959.

I leave to the theologians the intriguing conclusion of both the Board and the Court that the registrant's change of status did not result from circumstances over which the registrant had no control. Obviously, if he in good faith subscribed to his religious objections to military service as early as May 9, 1959, as the Court below found, then the only way he could control his then status was to abnegate his conscientious convictions. It seems to me that it was these very religious convictions which the statute clearly recognized and respected.

I do not believe the regulation (32 CFR § 1625.2) was intended to cover this situation. Keene v. United States, 266 F.2d 378 (10 Cir. 1959) is distinguishable because Keene was not a religious objector. To the extent that Keene holds that the Board's revocation of his order to report dated August 25th did not toll the provisions of the regulation prohibiting reconsideration, I must disagree. The Board itself voluntarily set aside its order of August 25, 1959; thus the effective date of registrant's order for induction was September 19, 1959, which was after the change of status took place and after the Board received notice and considered same.

Finally, I think registrant was entitled to be heard on the Board's decision not to reconsider his status. In my view this Appellant's only offense against the regulations was his failure to report his change of status within ten days after it occurred—on this record not later than May 9, 1959. Even this is in some doubt. A reading of Regulation 1625.1(b) with 1625.1(c) could make it apply only to those cases in which a registrant had been given a deferred status. United States v. Vincelli, 215 F.2d 210 (2 Cir. 1954) on petition for rehearing, 216 F. 2d 681 (2 Cir. 1954). These regulations are not to be construed strictly against the registrant. United States ex rel. Berman v. Craig, 207 F.2d 888 at 891

(3 Cir. 1953); United States v. Greene, 220 F.2d 792 at 794 (7 Cir. 1955).

Even if one construes the exemption of the statute as not absolute but controllable by regulation, the regulation to be valid must be reasonable and reasonably applied. If we also assume that Beaver violated a reasonable regulation by failing to advise his local Board of a change of status, I think it unreasonable for the Board to stand on this and deny him reconsideration, in face of the conceded fact that he was a conscientious objector as early as May 9, 1959. At the Board meeting on September 19, when they had all the facts, it was arbitrary to slam the door in his face and refuse the exemption on a narrow and wooden interpretation of the rule about a "change of status", which is of doubtful application anyway. The Board, it seems, was too intent on vindicating the rule, and too indifferent to the substantial rights of the defendant.

The statute gives this man exemption, the Army does not want him, the jail will not change his religious beliefs, nor will the will of the people to fight for their country be sapped by a generous adherence to the philosophy behind this law. United States v. Underwood, 151 F.Supp. 874 (E.D.Pa.1955). See also the language of Mr. Justice Frankfurter's dissent dealing with another aspect of this law.

> "Considering the traditionally high respect that dissent, and particularly religious dissent, has enjoyed in our view of a free society, this Court ought not to reject a construction of congressional language which assures justice in cases where the sincerity of another's religious convictions is at stake and where prison may be the alternative to an abandonment of conscience. The enemy is not yet so near the gate that we should allow respect for traditions of fairness, which has heretofore prevailed in this country, to be overborne by military exigencies." (1952) United States v. Nugent, 346

U.S. 1 at page 12, 73 S.Ct. 991, at page 997.

I would reverse the judgment because the Appellant is clearly within the category of those exempt by the statute.